# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 06-856

**ERIC R. CERWONKA**

**VERSUS**

**JOE D. BAKER AND TERESA COTHRAN BAKER**

**********

APPEAL FROM THE
TWENTY-EIGHTH JUDICIAL DISTRICT COURT
PARISH OF LASALLE, NO. 32,555
HONORABLE JOHN PHILIP MAUFFRAY, JR., DISTRICT JUDGE

**********

## ELIZABETH A. PICKETT
## JUDGE

**********

Court composed of Michael G. Sullivan, Elizabeth A. Pickett, and Billy Howard Ezell, Judges.

**AFFIRMED AS AMENDED AND RENDERED.**

**Walter Evans Dorroh Jr.**
**Attorney at Law**
**P.O. Box 1889**
**Jena, LA 71342**
**(318) 992-4107**
**Counsel for Defendant-Appellee:**
**Joe D. Baker**

**Donald Wilson**
**Gaharan & Wilson**
**P. O. Box 1346**
**Jena, LA 71342-0000**
**(318) 992-2104**
**Counsel for Defendant-Appellee:**
**Teresa C. Baker**

**Michael Roy Hubbell**
**James R. Raines**
**Breazeale, Sachse & Wilson**
**P. O. Box 3197**
**Baton Rouge, LA 70821-3197**
**(225) 387-4000**
**Counsel for Plaintiff-Appellant:**
**Eric R. Cerwonka**

**PICKETT, Judge.**

Eric Cerwonka, the biological father of Steven Baker, appeals a judgment of the trial court granting sole custody to the legal father, Joe Baker, subject to visitation by Dr. Cerwonka and the mother, Teresa Baker.

## STATEMENT OF THE CASE

Steven Baker was born on May 22, 1998. At the time, his mother, Teresa Baker, was married to Joe Baker. Ms. Baker had maintained an intimate relationship with Eric Cerwonka at the time Steven was conceived. Paternity testing later revealed that Dr. Cerwonka was the father of the Steven. Mr. Baker did not know about the relationship between Ms. Baker and Dr. Cerwonka, or the possibility that Steven was not his biological son, until the spring of 2001. At about the same time, Ms. Baker filed for divorce from Mr. Baker. The judgment granting the divorce was signed on October 11, 2001. Ms. Baker was named domiciliary parent of Steven in the initial divorce proceeding, subject to visitation by Mr. Baker.

In January 2002, Dr. Cerwonka filed a Petition for Custody/Visitation. He sought recognition as the biological father of Steven and custody of and visitation with Steven. The parties were able to reach an agreement in May 2002 concerning custody of Steven, wherein Dr. Cerwonka was given joint custody of Steven and allowed visitation. This agreement was never memorialized in a judgment. When the relationship between Ms. Baker and Dr. Cerwonka deteriorated, they each filed several motions in the district court seeking that the other party be held in contempt for violation of the custody agreement. They also sought modification of the custody arrangement. After a full year of allegations, motions, evaluations by mental health care professionals by all parties, and two separate hearings in the district court, the

1

trial court issued a Joint Custody Plan, which the trial court signed on May 8, 2003. Mr. Baker was named domiciliary parent of Steven and Ms. Baker and Dr. Cerwonka were awarded visitation.

In September 2003, the parties began attacking the arrangements under the Joint Custody Plan. Mr. Baker filed a motion asking the court to order Dr. Cerwonka to refrain from taking Steven to a counselor appointed by the court, Mary Girard. (The motion was later withdrawn by Mr. Baker.) Dr. Cerwonka filed a rule seeking to be named co-domiciliary parent and that the court establish procedures to facilitate communication between the parties. (The record is not clear about how this rule was disposed of by the trial court.) In February 2004, Ms. Baker sought a modification of the Joint Custody Plan. She alleged that she had fulfilled the conditions imposed on her by the trial court and that she had moved from Jena, Louisiana to Pineville, Louisiana. She asked the court that she be named domiciliary parent following the end of the 2003-2004 school year. Also, Dr. Cerwonka moved from New York to Lafayette, Louisiana, which necessitated a change in the visitation arrangements. The minutes of court indicate a hearing was held on April 20, 2004, to dispose of outstanding matters in this case, including the request of Ms. Baker that she be named domiciliary parent. The minutes and the judgment indicate the parties entered into an agreement whereby Ms. Baker would be named domiciliary parent. (The transcript is not in the record.) The trial court held that following the school year Ms. Baker would become domiciliary parent subject to visitation by Mr. Baker and Dr. Cerwonka in a judgment signed November 12, 2004.

The trial court held hearings on December 9, 2004, and January 17, 2005, to dispose of further motions filed by the parties because they were unable to abide by

2

the Joint Custody Plan. The trial court issued a very detailed Interim Joint Custody Plan on March 10, 2005.

In December 2005, all three parties again submitted issues to the district court for its determination. Dr. Cerwonka filed motions seeking a change in the joint custody plan and an order that the parties be subject to psychological evaluation again pursuant to La.R.S. 9:331. Ms. Baker filed a rule to show cause why Dr. Cerwonka should not be held in contempt for failure to pay child support. Mr. Baker filed an exception of vagueness to Dr. Cerwonka's motion, and a motion that should the court determine that a change in custody is necessary, the court should award Mr. Baker domiciliary custody.

The trial court held a hearing on these motions on January 23 and 24, 2006. At the conclusion of the hearing, the trial court ruled in open court that Mr. Baker would be awarded sole custody of Steven, subject to monthly visitation by Ms. Baker and Dr. Cerwonka. A judgment in conformity with the trial court's oral ruling was signed on April 18, 2006. Dr. Cerwonka has appealed that judgment.

## ASSIGNMENTS OF ERROR

The appellant, Eric Cerwonka, asserts five assignments of error:

1.  The trial court erred in granting Joe Baker sole legal care, custody and control of the minor child, Steven Baker, where Joe Baker stated in his pleadings that he opposed any modification of custody, and that if the Court determined it necessary to modify custody, he requested only that he be named domiciliary parent of the minor child.

2.  The trial court erred in granting Joe Baker sole legal care, custody and control of the minor child, Steven Baker, where the burden of proof was not met to modify custody.

3.  The trial court erred in granting Joe Baker sole legal care, custody and control of the minor child, Steven Baker, depriving Eric R. Cerwonka of his Constitutional rights under the Due Process Clause.

3

4. The trial court erred in granting Joe Baker sole legal care, custody and control of the minor child, Steven Baker, where the burden of proof was not met to grant custody to a non-parent.

5. The trial court erred in not appointing a mental health evaluation of the parties as allowed under La.R.S. 9:331.

## DISCUSSION

In *Arrington v. Campbell*, 04-1649, p. 2 (La.App. 3 Cir. 3/9/05), 898 So.2d 611, 612, this court stated:

> This court has clearly stated the standard of review for an appellate court in child custody matters. "The trial court is in a better position to evaluate the best interest of the child from its observances of the parties and witnesses; thus, a trial court's determination in a child custody case is entitled to great weight on appeal and will not be disturbed unless there is a clear abuse of discretion." *Hawthorne v. Hawthorne*, 96-89, p. 12 (La.App. 3 Cir. 5/22/96), 676 So.2d 619, 625, *writ denied* 96-1650 (La.10/25/96), 681 So.2d 365. Under Louisiana Civil Code Article 131, decisions regarding custody of the children are made with the best interest of the child being paramount. Louisiana Civil Code Article 134 provides a number of factors to be considered in making the best interest determination. These factors are merely suggested factors, and the trial court is free to use other factors to make its determination. *Aucoin v. Aucoin*, 02-756 (La.App. 3 Cir. 12/30/02), 834 So.2d 1245. However, the trial court should consider the totality of the facts and circumstances in its analysis of the best interest of the child.

Since the second assignment of error concerns the burden of proof required below to modify the existing custody arrangement, we will address that assignment first. Dr. Cerwonka argues that each of the previous judgments rendered by the trial court were considered decrees, and therefore could not be modified unless the high burden imposed in *Bergeron v. Bergeron*, 492 So.2d 1193 (La.1986), had been met. In *Bergeron*, the supreme court stated:

> When a trial court has made a considered decree of permanent custody the party seeking a change bears a heavy burden of proving that the continuation of the present custody is so deleterious to the child as to justify a modification of the custody decree, or of proving by clear and

4

convincing evidence that the harm likely to be caused by a change of environment is substantially outweighed by its advantages to the child.

*Id.* at 1200.

Dr. Cerwonka argues that either the May 8, 2003 judgment, the November 12, 2004 judgment, or the March 10, 2005 judgment was a considered decree, and thus the "heavy burden" imposed in *Bergeron* is applicable. At the beginning of the trial on January 23, 2006, the trial court addressed this issue. The trial court explained to counsel before any evidence was taken that it was working under the belief that they were not dealing with a considered decree. The trial court explained that the May 8, 2003 judgment was a considered decree, but the 2004 custody plan altering that judgment was agreed to among the parties and not subject to the heightened proof standards enunciated in *Bergeron*. The counsel for each of the parties, including Dr. Cerwonka, agreed with the trial court's characterization of the previous judgments. Thus, Dr. Cerwonka is technically estopped from arguing in this court that the trial court's ruling is incorrect. *See* La.Code Civ.P. art. 2085. We find, however, no error in the trial court's characterization of the previous judgments.

The May 8, 2003 judgment was a considered decree. It was modified in 2004 to take into account the fact that Dr. Cerwonka moved from New York City to Lafayette, Louisiana, and Ms. Baker moved from Jena to Pineville and was named domiciliary parent. The parties agreed to the modification of this decree to take into account the changes in circumstance. It was not a considered decree in the sense that the parties came to an agreement about the changes with the approval of the court. *Peyton v. Peyton*, 614 So.2d 185 (La.App. 3 Cir. 1993). The March 10, 2005 judgment is not subject to the *Bergeron* standards because it was an interim custody plan, and *Bergeron* only applies to a "considered decree of **permanent** custody."

5

Thus, the burden of proof in this case is that for a non-considered decree. The party seeking a change in the custody arrangement must prove: "1) a change in circumstances affecting the welfare of the [child] had occurred since the original decree, and 2) the proposed modification is in the best interest of the [child]." *Aucoin*, 834 So.2d at 1249.

The trial court heard evidence that the inability of Dr. Cerwonka and Ms. Baker to communicate with each other about Steven's needs, their past histories of manipulation of Steven, and their incivility toward one another had a negative effect on Steven. The trial court found that Steven was not subject to the same problems when he was with Mr. Baker. The trial court also found that Mr. Baker was able to effectively communicate with both Dr. Cerwonka and Ms. Baker, and that he was in a better position to facilitate visitation with Dr. Cerwonka and Ms. Baker. The trial court has had these parties before it for over four years now, and has become very familiar with the parties. We cannot say that the trial court abused its discretion by awarding domiciliary custody to Mr. Baker and visitation to Dr. Cerwonka and Ms. Baker.

The trial court, however, awarded sole custody to Mr. Baker. In his first assignment of error, Dr. Cerwonka argues that it was error to remove Steven from the joint custody of Dr. Cerwonka because, in his pleadings, Mr. Baker only asked that he be granted domiciliary custody and the pleadings were not expanded during the trial to allow for an award of sole custody to Mr. Baker. This position is supported by the second circuit's opinion in *Havener v. Havener*, 29,785 (La.App. 2 Cir. 8/20/97), 700 So.2d 533, wherein the trial court held that the award of sole custody

6

to the father was in error where he only sought domiciliary custody with his former wife having joint custody.

In response, Mr. Baker acknowledges that he only sought domiciliary custody in his pleadings. He argues, however, that the pleadings were expanded during the course of the trial to justify an award of sole custody to Mr. Baker. Mary Girard, a social worker who had counseled Steven, and Dr. Kelly Pears, a psychologist who reviewed the previous psychological examinations of the parties, testified about the difficulties that a child may experience when his separated parents have a bad relationship, and specifically about the difficulties Steven has had in dealing with the relationships among his three parents, especially Dr. Cerwonka and Ms. Baker. At no point in their testimony did either of them suggest that Dr. Cerwonka or Ms. Baker was incapable of caring for Steven's needs. Thus, we do not find that the pleadings were expanded to justify the trial court's award of sole custody to Steven. The judgment is amended to provide that all three parent are awarded joint custody and Mr. Baker is named the domiciliary parent.

The trial court did not err in awarding physical custody of Steven to Mr. Baker as Dr. Cerwonka suggests in arguing his second assignment of error. Based on the testimony of Ms. Girard, Dr. Pears, and the parties, the trial court found that Mr. Baker was in the best position to care for Steven, and that he was the most likely to foster a healthy relationship between Steven and his other parents. Essentially, the relationship between Dr. Cerwonka and Ms. Baker was too volatile to allow for Steven to live with either of them and continue to have a good relationship with the other. The trial court did not abuse its discretion in reaching this finding.

Dr. Cerwonka also argues that the trial court relied too heavily on Ms Girard's testimony in reaching its decision. He argues that Ms. Girard had seen Steven only once in the last year, and that Ms. Baker had also attended counseling sessions with Ms. Girard. Dr. Cerwonka made no contemporaneous objection to the foundation of Ms. Girard's testimony during the trial. Furthermore, the expert produced by Dr. Cerwonka, Dr. Pears, had never seen Steven, only the records of the evaluations of all of the parties. The trial court used Ms. Girard's testimony to give further support to its independently reached conclusion.

Dr. Cerwonka's third assignment of error is moot. He complains that the trial court violated his due process rights by granting sole custody to Mr. Baker. By granting joint custody to all three parents, this alleged constitutional defect is cured. Further, this assignment of error will not be considered by this court because it is raised for the first time on appeal. The supreme court has enunciated the rule that "issues not submitted to the trial court for decision will not be considered by the appellate court on appeal." *State v. Williams*, 02-898, 02-1030, p. 7 (La. 10/15/02), 830 So.2d 984, 988. *See also* Uniform Rules – Courts of Appeal Rule 1-3.

Dr. Cerwonka's fourth assignment of error is that Mr. Baker, as the legal father of Steven, is a non-parent and should only be given custody if the requirements of La.Civ.Code art. 133 are met. Article 133 states:

> If an award of joint custody or of sole custody to either parent would result in substantial harm to the child, the court shall award custody to another person with whom the child has been living in a wholesome and stable environment, or otherwise to any other person able to provide an adequate and stable environment.

Dr. Cerwonka argues that a legal father is a non-parent, and thus Mr. Baker should only be awarded sole custody if joint custody to Dr. Cerwonka and Ms. Baker would

result in "substantial harm" to Steven. The argument rests on Louisiana cases denying legal fathers the right to recover in tort suits when the biological father is a party. In as much as we find an award of joint custody to all three parents is appropriate, with Mr. Baker named domiciliary parent, this assignment of error is moot.

The fifth assignment of error raised by Dr. Cerwonka is whether the trial court erred in refusing to order mental health evaluations of the parties pursuant to La.R.S. 9:331, which states:

> A. The court may order an evaluation of a party or the child in a custody or visitation proceeding for good cause shown. The evaluation shall be made by a mental health professional selected by the parties or by the court. The court may render judgment for costs of the evaluation, or any part thereof, against any party or parties, as it may consider equitable.

> B. The court may order a party or the child to submit to and cooperate in the evaluation, testing, or interview by the mental health professional. The mental health professional shall provide the court and the parties with a written report. The mental health professional shall serve as the witness of the court, subject to cross-examination by a party.

The language of the statute is permissive, and the decision to require the evaluations lies in the discretion of the court. *Bourque v. Bourque*, 03-1254 (La.App. 5 Cir. 3/30/04), 870 So.2d 1088.

Here, the trial court already had access to psychological evaluations of the parties which were performed in 2003. Both experts who testified that the pathology of the parties would not significantly change in three years, and that counseling to help treat the problems was more helpful. While Dr. Pears did state that Pippen evaluations are generally done on all parties involved, he did not testify that further testing would be beneficial. The trial court did not abuse its discretion in failing to require further psychological evaluation of the parties.

9

## CONCLUSION

We amend the judgment of the trial court to reflect an award of joint custody to Joe Baker, Teresa Baker, and Eric Cerwonka. Joe Baker is designated as domiciliary parent. The judgment of the trial court is affirmed in all other respects. Costs of this appeal are assessed to Eric Cerwonka.

**AFFIRMED AS AMENDED AND RENDERED.**